███████████████████

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ADVANCED CODING TECHNOLOGIES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS INC., and LG ELECTRONICS U.S.A., INC.<br><br>Defendants. | Civil Case No. 2:22-cv-00501-JRG [Lead case]<br><br>**JURY TRIAL DEMANDED** |
| ADVANCED CODING TECHNOLOGIES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Defendants. | Civil Case No. 2:22-cv-00499-JRG [Member case]<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S *DAUBERT* MOTION TO STRIKE
EXPERT TESTIMONY OF STEPHEN E. DELL**

███████████████████████████████████

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

TABLE OF EXHIBITS ................................................................................................................ iv

TABLE OF ABBREVIATIONS ................................................................................................... iv

I.    THE COURT SHOULD EXCLUDE MR. DELL'S OPINIONS ABOUT THE ███████████████, WHICH ARE NOT TIED TO THE FACTS OF THE CASE ................................................................................................ 1

    A.    Mr. Dell Concocts an "Imputed" Rate from the ████████ ████████ ............................................................................................. 2

    B.    Mr. Dell's Upward Adjustment Is Untethered to the Facts and Is Unreliable ........................................................................................................ 2

    C.    Mr. Dell's Calculation of Effective Rates Is Not Based on Record Evidence ........................................................................................................... 4

II.   THE COURT SHOULD EXCLUDE DELL'S OPINIONS BASED ON INCOMPARABLE PAST LICENSES AND OFFERS ........................................................ 5

    A.    Mr. Dell's Reliance on the ████████████ and Sisvel Offers ......................... 5

        1.    ████████████ ................................................................................... 5

        2.    Sisvel Offers ............................................................................................ 7

    B.    The Court Should Exclude Mr. Dell's Opinions Because They Rest on the ████████████ and Sisvel Offers Without Evidence of Comparability ........................................................................................................... 8

        1.    Lack of Technical Comparability ............................................................. 8

        2.    Lack of Economic Comparability ........................................................... 10

III.  MR. DELL'S OPINIONS ARE BASED ON THE ALLEGED BENEFITS OF TECHNICAL STANDARDS AS A WHOLE, NOT THE ASSERTED PATENTS ............................................................................................................... 12

IV.   THE COURT SHOULD EXCLUDE MR. DELL'S FUTURE DAMAGES .................. 15

V.    CONCLUSION ................................................................................................................ 15

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apotex, Inc.*,
  49 F. App'x 902 (Fed. Cir. 2002) ...........................................................................................15

*Adasa Inc. v. Avery Dennison Corp.*,
  55 F.4th 900, 915 (Fed. Cir. 2022) .......................................................................................8, 9

*Apple Inc. v. Wi-LAN Inc.*,
  25 F.4th 960, 966 (Fed. Cir. 2022) ......................................................................................10, 11

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014).................................................................................................12

*Avocent Redmond Corp. v. Rose Elecs.*,
  No. C06-1711RSL, 2013 WL 8844098 (W.D. Wash. Mar. 11, 2013) .....................................3

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)..............................................................................................8, 9

*Biscotti Inc. v. Microsoft Corp.*,
  No. 2:13-CV-01015-JRG-RSP, 2017 WL 2607882 (E.D. Tex. May 25, 2017)......................12

*Carucel Invests., L.P. v. Novatel Wireless, Inc.*,
  2017 WL 1215838 (S.D. Cal. Apr. 3, 2017)............................................................................3

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)...............................................................................................13

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)............................................................................................12, 13

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010)................................................................................................8

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)....................................................................................................8

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
  No. 13-304-LPS, 2016 WL 4490706 (D. Del. Aug. 25, 2016)................................................3

*MiiCs & Partners, Inc. v. Funai Elec. Co., Ltd.*,
  No. 14-804-RGA, 2017 WL 6268072 (D. Del. Dec. 7, 2017)................................................12

*Netlist, Inc. v. Micron Tech., Inc.,*
No. 2:22-CV-203-JRG-RSP, (E.D. Tex. Jan 27, 2024)...........................................................15

*Sci. Applications Int'l Corp. v. United States*,
No. 17-CV-825, 2024 WL 94499 (Fed. Cl. Jan. 9, 2024) .......................................................15

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)...........................................................................................3, 4

*Virnetx, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)................................................................................................3

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)...............................................................................................12

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010)...............................................................................................8

**Statutes**

35 U.S.C. § 284.......................................................................................................................15

████████████████████████████████

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Expert Report of Stephen E. Dell (June 3, 2024) (excerpts) |
| 2 | ████████████████████████████████████ |
| 3 | Deposition of Stephen E. Dell (June 27, 2024) (excerpts) |
| 4 | Website: https://accessadvance.com/licensing-programs/hevc-advance |
| 5 | Expert Report of Dr. Hari Kalva (June 3, 2024) (excerpts) |
| 6 | Expert Report of Dr. Zixiang Xiong (June 3, 2024) (excerpts) |
| 7 | Deposition of Dr. Hari Kalva (July 3, 2024) (excerpts) |
| 8 | ACT's 4th Suppl Resps Obj to 1st Set of Rogs (May 30, 2024) (excerpts) |
| 9 | Rebuttal Expert Report of Joseph P. Havlicek (June 24, 2024) (excerpts) |
| 10 | Deposition of Dr. Zixiang Xiong (July 3, 2024) (excerpts) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Asserted Patents | The '025 Patent, '303 Patent, '995 Patent, '150 Patent, and '041 Patent |
| '025 patent | U.S. Patent No. 8,090,025 |
| '303 patent | U.S. Patent No. 9,986,303 |
| '995 patent | U.S. Patent No. 10,218,995 |
| '150 patent | U.S. Patent No. 8,139,150 |

Samsung respectfully moves to exclude certain opinions of ACT's damages expert, Stephen Dell, under Rule 702 and *Daubert*.[1]  Here, four categories of Mr. Dell's opinions are unreliable and must be excluded: (1) his unreliable adjustments to the ███████████, including an upward adjustment based on plaintiffs' win rates in this District, which is untethered to the facts of the case; (2) his reliance on incomparable past licenses and offers, including the ██████████ and Sisvel offers; (3) his reliance on alleged benefits of technical standards as a whole, not the Asserted Patents ████████████████████ and (4) his speculative opinions about future damages through expiration of the Asserted Patents.

## I.   THE COURT SHOULD EXCLUDE MR. DELL'S OPINIONS ABOUT THE ███ ████████████, WHICH ARE NOT TIED TO THE FACTS OF THE CASE

The lynchpin of Mr. Dell's damages opinions are supposed "Royalty Rate Benchmarks" derived from three sources: (1) the "████████████"; (2) the ████████████████ and (3) the "Sisvel VP9/AV1 Licensing Program Rates":



Ex. 1, ¶ 337 (summarizing these "benchmarks"); *see also id.*, ¶¶ 312 (same).

---

[1] Rule 702 was amended in 2023 to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."  Advisory Committee Notes to 2023 Amendments.

The Court should exclude Mr. Dell's opinions based on the ▮▮▮▮▮▮▮▮ for at least two reasons. First, Mr. Dell's litigation risk adjustment is based on average litigation rates, not facts specific to the case, and they are thus unreliable. Second, Mr. Dell's calculation of effective royalty rates is unreliable because he has no reliable evidence on which to base it.

### A.   Mr. Dell Concocts an "Imputed" Rate from the ▮▮▮▮▮▮▮

To arrive at his opinions about the reasonable royalty rates applicable to the hypothetical negotiation, Mr. Dell uses rates he derives from the ▮▮▮▮▮▮▮ as one "Rate Benchmark." Ex. 1, ¶ 338. The ▮▮▮▮▮▮▮ provided for a ▮▮▮▮▮▮▮ *Id.*, ¶ 115. Mr. Dell, based on what he asserts (without evidence) are ▮▮▮▮▮▮▮, calculates an effective royalty rate between ▮▮▮▮▮▮▮ *Id.*, ¶¶ 115, 117. Mr. Dell then states that the ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ *Id.*, ¶ 118. Mr. Dell cites a 2018 PWC Study that reported "overall patent holder success rates from 1998 to 2017 averaged 25% for non-practicing entities," and that "for the Eastern District of Texas, the overall success rate at trial for the same period was 52%." *Id.*, ¶ 122. Mr. Dell uses these average win-rates to arrive at the "Rate Benchmark" he asserts is supported by the ▮▮▮▮▮▮▮: ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮, I have applied the range of contemporaneous risk/discount factors above to the ▮▮▮▮▮▮▮ per unit effective royalty rates, resulting in non-discounted effective royalty rates ranging from approximately ▮▮▮▮▮

▮▮▮▮▮▮▮ . . . ." *Id.*, ¶ 123; *see also id.*, ¶ 123 n.201 (showing arithmetic).

### B.   Mr. Dell's Upward Adjustment Is Untethered to the Facts and Is Unreliable

Mr. Dell's opinions about the ▮▮▮▮▮▮▮ rely on average litigation success rates, not case-specific facts, rendering them inadmissible. In proving damages, a patentee must present

evidence "tied to the relevant facts and circumstances of the particular case at issue" and may not rely on a "rule of thumb." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315-18 (Fed. Cir. 2011); *see also Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333-34 (Fed. Cir. 2014). Courts thus exclude the use of average litigation success rates in adjusting a settlement agreement's royalty. *See, e.g.*, *MAZ Encryption Techs. LLC v. Blackberry Corp.*, No. 13-304-LPS, 2016 WL 4490706, *1-2 (D. Del. Aug. 25, 2016) (Stark, J.) (excluding upward adjustment based on 40% local win rate as "not reliable as it is not sufficiently tied to the particular facts of this case"); *Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2013 WL 8844098, *4-5 (W.D. Wash. Mar. 11, 2013) (excluding upward adjustment based on 33% win rate); *see also Carucel Invests., L.P. v. Novatel Wireless, Inc.*, 2017 WL 1215838, *21 (S.D. Cal. Apr. 3, 2017) (similar).

In *MAZ Encryption*, Judge Stark excluded an opinion just like the one Mr. Dell advances here. 2016 WL 4490706, at *1-2. The patentee's damages expert—like Mr. Dell (Ex. 1, ¶ 112)— relied on a previous license agreement involving the patent-in-suit. *Id.* at *1. The expert—like Mr. Dell (Ex. 1, ¶¶ 118-120)—opined that because an agreement was reached in the context of settlement, the rate needed to be adjusted to account for the assumption at the hypothetical negotiation that the patent would be valid and infringed. *Id.* at *1-2. As an adjustment, the expert—like Mr. Dell (Ex. 1, ¶¶ 122-123 & n.201)—divided the settlement value by the average litigation success rate for patent holders in the District. *Id.* at *2. The court excluded this adjustment because the average success rate "was not based on any facts relating to the merits of Plaintiff's case." *Id.* Other courts have reached the same conclusion on similar facts. *See, e.g.*, *Avocent*, 2013 WL 884098, at *5; *Carucel*, 2017 WL 1215838, at *21.

The Court should exclude Mr. Dell's upward rate adjustment because it is based on average lawsuit success rates—i.e., a rule of thumb—not a case-specific analysis of the facts here. The

3

████████████████████████████████

Court should also exclude Mr. Dell's opinions that rely on the adjusted ██████████████ rates, including his ultimate opinions on reasonable royalty rates for the Asserted Patents. *See Uniloc*, 632 F.3d at 1317 ("It is of no moment that the . . . rule of thumb is offered merely as a starting point to which the *Georgia-Pacific* factors are then applied to bring the rate up or down. Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion.").

### C. Mr. Dell's Calculation of Effective Rates Is Not Based on Record Evidence

The Court should also exclude Mr. Dell's reliance on the ██████████████ for an independent reason: he lacks reliable evidence for his calculations. ████████████████████ ████████████████████, Mr. Dell claims to have ████████████████████████ ████████████████████████████████ Ex. 1, ¶ 115. But no record evidence establishes that ██████████████████████, and Mr. Dell's analysis is thus unreliable.

To support the ████████████████████, Mr. Dell relies on ██████████████ produced ██████ in response to a subpoena. *See* Ex. 1, ¶ 115 n.192. However, they do not reveal the nature and scope of the included data, for example, ████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████ *See* Ex. 2. ██████ ████████████████████████████████████████████████████████ █████████████████████████████████████ ██████ provided no declaration or sworn testimony about these records. No testimony establishes what these records are, what data they contain, or when or how they were created and maintained, much less that they show █████████████████████████████████████ ████████████████ as Mr. Dell asserts. Because no evidence establishes ████████████████████ ██████ Mr. Dell's opinion is unreliable and inadmissible.

4

██████████████████████████████████████████

## II.    THE COURT SHOULD EXCLUDE DELL'S OPINIONS BASED ON INCOMPARABLE PAST LICENSES AND OFFERS

The Court should also exclude Mr. Dell's opinions because they depend on licenses and offers lacking any basis to establish technical or economic comparability to the license that would have resulted from the hypothetical negotiation. In addition to the ████████████████, Mr. Dell's opinions rest on royalty rates he derived from (1) ████████████████████████████ ████████████████████████████ and (2) Sisvel's published royalty rate offers for patent pools related to the AV1 and VP9 video codec specifications. Ex. 1, ¶ 337 (summarizing his "benchmarks"); *id.*, ¶¶ 312 (same), 346 (discussing ███████████████).

For alleged technical comparability, Mr. Dell relies on the opinions of ACT's technical experts, but neither of them provides any basis for any supposed technical comparability—nor could they, since none of ACT's experts ever looked at a single patent licensed under the agreements. As to economic comparability, Mr. Dell's opinions fare no better. This case involves five remaining patents-in-suit, whereas the rates Mr. Dell derives from the ███████████ and the Sisvel pools provide license rights for up to *tens of thousands of patents*, including standard-essential patents ███████████████. Mr. Dell does not account for the economic differences between those scenarios, nor does he grapple with the fact that the Sisvel rates are only published offers, not rates to which evidence shows any party has actually agreed.

### A.    Mr. Dell's Reliance on the ███████████ and Sisvel Offers

Mr. Dell's opinions for the '025, '303, '995, and '150 patents—asserting the parties would have agreed to rates ranging from ███████████████—flow directly from his analysis of the █████ and Sisvel "benchmarks." Ex. 1, ¶¶ 357; *see also id.*, ¶¶ 332-356.

#### 1.    ███████████████

Mr. Dell derives his ████████████████████████████████████████

5

██████████████████████████████████████

█████████████████████████████████████████████████

██████████████ *See* Ex. 1, ¶¶ 131-49. ████████████████████████

████████████████████████████████████████████████ *Id.* ¶¶

52, 131 █████████████████████████████████████

████████████████████████████████████████████ Mr. Dell

does not identify how many patents are included in the ██████████████████████, nor do either of ACT's technical experts. At deposition, Mr. Dell admitted it was "more than a thousand patents," although he did know the specific number, explaining one could determine that from "HEVC's website." Ex. 3 at 199:11-200:11. That website reveals that the ████████████████ patent pool encompasses **over 23,000 patents**. Ex. 4 (linking to https://accessadvance.com/wp-content/uploads/2024/04/2024.04.01-Website-Patent-List.xlsx).

As to the technical subject matter of the patents licensed under the ████████████████, Mr. Dell relies entirely on ACT's technical experts. Specifically, he explains that one of ACT's technical experts relayed that "the patents and technologies covered by the licensed patents in both the ████████████████████████ involve video coding technologies that are **sufficiently similar** to the video related technologies of the AV1 Patents." Ex. 1, ¶ 146 (emphasis added); *see also* Ex. 3 at 196:7-11 ("For technological comparability of the asserted patents and the licensed technologies relevant to the ████████████, and the patented issue in this case, I'm relying upon [Drs. Xiong's and Kalva's] expert opinions in that regard.").

However, ACT's technical experts do not provide any basis for concluding that any patents licensed under the ████████████████ are "sufficiently similar" let alone technically comparable to any asserted patent. Instead, both Drs. Xiong's and Kalva's reports contain a single boilerplate paragraph—nearly identical to one another—concerning the supposed technical comparability of

6

the ███████████. Ex. 5, ¶ 437; Ex. 6, ¶ 314. Their "analysis" is entirely conclusory and does not identify a single patent licensed under the ███████████ to which any asserted patent is supposedly comparable. Instead, they concede they are "***not aware*** of any of the licensed patents relating to the same technology of the [asserted] AV1 patents specifically." *Id.* (emphasis added). Dr. Kalva also admits he never identified, analyzed, or looked at any patents licensed under the agreements. Ex. 7 at 252:2-10, 269:23-270:3.

### 2. Sisvel Offers

Mr. Dell's next "benchmark" is the "Sisvel VP9/AV1 Licensing Program Rates." Ex. 1, ¶ 337; *id.*, ¶ 285 (stating Sisvel "currently manages a Video Coding Licensing Platform, including two separate, joint licensing programmes, offering licenses under patents necessary to practice the VP9 and AV1 specification"). These patent pools include patents "owned or controlled" by various licensors "related to the VP9 or AV1 specifications." *Id.*, ¶¶ 286-288. He says "Sisvel's published rates for its VP9 and AV1 programs . . . for consumer display devices rang[e] from $0.19 to $0.26 per unit for VP9 and $0.26 to $0.35 per unit for AV1." *Id.*, ¶¶ 289-90.

As to these Sisvel "published rates," Mr. Dell offers even less basis for any technical or economic comparability than he does for the ███████████. No ACT expert identifies any patents licensed as part of those pools, let alone analyzes their alleged technical comparability to the asserted patents. For his part, Mr. Dell does not identify how many patents are licensed under the Sisvel patent pools. The Sisvel webpages cited in Mr. Dell's report reveal its AV1 patent pool includes hundreds, if not thousands of patents. Ex. 1, ¶ 53 n.101 (citing Ex. 4, which links to https://accessadvance.com/wp-content/uploads/2024/04/2024.04.01-Website-Patent-List.xlsx). He also does not identify any evidence that any company has ever agreed to Sisvel's published rates. Thus, these published rates are mere licensing ***offers*** rather than evidence of any consummated agreement based on an arm's-length negotiation.

███████████████████████████████████████

**B.      The Court Should Exclude Mr. Dell's Opinions Because They Rest on the ███████████████ and Sisvel Offers Without Evidence of Comparability**

Mr. Dell's opinions are inadmissible because he cannot show a baseline technical or economical comparability between the facts here and the ████████████████ or Sisvel offers.

Damages opinions based on royalty rates derived from prior license agreements are only admissible where they are technically and economically comparable to the facts of the case. The proponent "must account for differences in the technologies and economic circumstances of the contracting parties." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010). "[A] loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) ("[C]omparisons of past licenses to the infringement must account for the technological and economic differences between them."). Whether a license is sufficiently comparable can be a jury question, but the evidence must establish at least a "baseline of comparability" for the opinion to be admissible. *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020).

### 1.      Lack of Technical Comparability

Mr. Dell's reliance on ACT's technical experts does not come close to establishing a baseline of technical comparability. Drs. Kalva's and Xiong's single, cursory paragraphs provide no analysis from which a jury could conclude that any of the licensed patents are technically comparable to any asserted patents. Drs. Xiong and Kalva failed to identify, review, or analyze a single patent licensed as part of the ████████████████, making it impossible to have adequately concluded that any such patents are technically comparable to any asserted patent. That failure is fatal, rendering Mr. Dell's opinions inadmissible.

The circumstances here echo those in *Adasa Inc. v. Avery Dennison Corp.*, where the

8

Federal Circuit agreed that a damages expert's reliance on past licenses could not be admitted because the opinion lacked a sufficient baseline showing of technical comparability. 55 F.4th 900, 915 (Fed. Cir. 2022). The damages expert depended on a technical expert for alleged technical comparability, but the expert only provided a brief paragraph noting that the licensed portfolios "include patents that cover RFID transponders." *Id.* The court rejected that because, "merely observing that some patents in a portfolio cover RFID technology" provided too little insight into their relation to the asserted patent to establish comparability. *Id.* Here, Mr. Dell's opinion rests on his understanding from ACT's technical experts that have the same lacking level of detail as the expert in *Adasa:* ███████████████████████████ ***involve video coding technologies*** that are sufficiently similar to the video related technologies of the AV1 Patents." Ex. 1, ¶ 146 (emphasis added); *see also* Ex. 5, ¶ 437 (offering nearly identical opinion). And, as for the Sisvel offers, none of ACT's experts offer any opinions about any supposed technical comparability of any patents in the Sisvel pools, not even providing the conclusory language on which they rely for the ███████████████ and which the court found lacking in *Adasa*.

Further, ACT's technical experts, like the expert in *Adasa*, actively differentiate the ███████████████████████ from the asserted patents. There, the technical expert distinguished the licensed technology from the asserted patent, stating that the licensed patents "cover a range of 'foundational technologies' or 'fundamental aspects' in the 'RFID space'" in contrast to the specific claims of the asserted patent. 55 F.4th at 915. Again, ACT's experts offer similar opinions. Dr. Kalva and Dr. Xiong flag differences between the licensed technology and the asserted patents, explaining "the technologies of the [asserted] AV1 Patents provide distinct technological advantages and improvements over prior video codec technologies such that the technological contribution, and in turn technological value, would be greater for the AV1 Patents

9

compared to the licensed patents as part of the ███████████.” Ex. 5, ¶ 437; Ex. 6, ¶ 314. Just as in *Adasa*, Drs. Kalva and Xiong's single sentence of conclusory "analysis" is insufficient to demonstrate technical comparability, especially when followed by a claim that the licensed technology is supposedly different from and inferior to the asserted patents.

### 2.    Lack of Economic Comparability

Mr. Dell's opinions are independently inadmissible because he fails to establish sufficient economic comparability of the ███████████████ or the Sisvel offers, for at least three reasons. First, Mr. Dell disregards the number of licensed patents. Economic comparability requires, at a minimum, accounting for the vast difference in the number of patents licensed under the past licenses (e.g., over 23,000 patents) and the number of patents asserted here (five patents). But, Mr. Dell did not meaningfully account for that difference. Instead, Mr. Dell claims that no adjustment to the royalty rate is necessary because the ███████████ and the Sisvel offers reflect the same royalty rate regardless of whether the licensee uses every licensed patent or just a single one. Mr. Dell attributes the entire royalty rate, which covers over 23,000 patents, as economically equivalent to a rate for a single patent. Ex. 1, ¶ 308 ("I understand the stated per unit royalty rates are required to be paid by the licensee even if only a *single* patent was licensed as part of the agreement, demonstrating that the royalty rates identified are applicable even on a per patent basis." (emphasis original)); *see also id.*, ¶¶ 148, 178, 356; Ex. 3 at 200:24-201:18. Thus, Mr. Dell's opinion rests on the premise that every single patent licensed under the ███████ or the Sisvel offers has the same value.

That logic requires excluding his opinion because Federal Circuit precedent precludes reliance on multi-patent licenses without analysis of how the agreed-upon royalty can be attributed to the specific, allegedly comparable, licensed patents. In *Apple Inc. v. Wi-LAN Inc.*, the Federal Circuit vacated a damages award based on lump sum license agreements covering both the asserted

10

patents and many others.  25 F.4th 960, 966 (Fed. Cir. 2022).  Even though the asserted patents were technically comparable to some licensed patents—i.e., they were among the licensed patents—that was not sufficient.  The patentee's expert did not identify evidence of the value the parties to the prior agreements attributed to any particular patents, claiming instead the asserted patents were the "key patents" in the licensed portfolio and attributing the entire royalty to those. *Id.* at 972.  Because Mr. Dell likewise fails to identify any evidence or analysis of the specific value of any particular patents covered by the ███████████ or the Sisvel offers, his opinion cannot permissibly rest on the total royalty rates under those agreements.

Second, Mr. Dell fails to account the effect of standard-essentiality on the royalty rate agreed upon in the ███████████.  The ███████████ cover thousands of patents that he says are essential to practicing the HEVC (a.k.a., H.265) video encoding standard.  Ex. 1, ¶¶ 52, 131.  In contrast, ████████████████████████████ ████████  *See* Ex. 8 at 114-28.  Indeed, Mr. Dell concedes the royalty rates in the ████████ ████████ are "FRAND rate(s) that would necessarily need to be reconciled to account for any economic factors that may have resulted in a lower negotiated royalty rate."  Ex. 1, ¶ 331.

But Mr. Dell never meaningfully reconciles the different economic circumstances between a patent pool agreement for tens of thousands of FRAND-encumbered standard-essential patents and the facts here involving five patents ████████████████████  Instead, he merely acknowledges that the difference in circumstances would cause the parties to the hypothetical negotiation to "anchor[] the starting royalty rate negotiations at the upper end of the respective starting point range . . . ."  Ex. 1, ¶ 354.  That is, he continues to tether his opinion to the bargaining ranges that he derived from agreements involving FRAND rates.

Because licensing of FRAND-encumbered patents involves fundamentally different

11

█████████████████████

economic considerations ████████████████, one cannot account for those differences merely by selecting one end of a supposed bargaining range derived from FRAND royalties. As this Court explained in *Biscotti Inc. v. Microsoft Corp.*, "the Federal Circuit has recognized the difference in application of the *Georgia-Pacific* factors to cases involving RAND-encumbered patents." No. 2:13-CV-01015-JRG-RSP, 2017 WL 2607882, at *4 (E.D. Tex. May 25, 2017); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014) ("In a case involving RAND-encumbered patents, many of the *Georgia-Pacific* factors simply are not relevant; many are even contrary to RAND principles.").

Finally, as to the Sisvel offers, Mr. Dell's opinions should also be excluded because they are merely offers; Mr. Dell identifies no evidence any party ever agreed to pay those rates. Unsolicited offers have limited evidentiary value because "patentees could artificially inflate the royalty rate by making outrageous offers." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012); *see also MiiCs & Partners, Inc. v. Funai Elec. Co., Ltd.*, No. 14-804-RGA, 2017 WL 6268072, *4 (D. Del. Dec. 7, 2017) (excluding expert opinion based on un-accepted licensing offer as a hypothetical negotiation "starting point"). Sisvel's unaccepted royalty rates cannot reliably reflect the market value of the patents because they were unilaterally conjured by Sisvel; they are not evidence of what actual licensees negotiated and accepted. The Federal Circuit has explained that the hypothetical negotiation framework is meant to approximate the "fair market value" of a patented invention, which should reflect "the two-sided nature of the posited negotiation." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770-71 (Fed. Cir. 2014). Sisvel's unaccepted offers are the opposite—i.e., one-sided and non-negotiated.

## III.    MR. DELL'S OPINIONS ARE BASED ON THE ALLEGED BENEFITS OF TECHNICAL STANDARDS AS A WHOLE, NOT THE ASSERTED PATENTS

The Court should also exclude Mr. Dell's opinions because the supposed technical benefits

12

on which he bases his opinions are not tied to the asserted patents, but rather relate to the accused technical standards as a whole. The technical experts on which Mr. Dell relies did not opine that those supposed benefits are attributable specifically to the asserted patents. In fact, one technical expert on which Mr. Dell relies admits he did not even analyze whether those supposed technical benefits are attributable specifically to the asserted patents.

In assessing damages for patents asserted to read on a standard, "the patented feature must be apportioned from all of the unpatented features reflected in the standard." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014). "[T]he patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology." *Id.* "These steps are necessary to ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology." *Id.* "In other words, a royalty award . . . must be apportioned to the value of the patented invention (or at least to the approximate value thereof), not the value of the standard as a whole." *Id.* at 1233; *see also Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1305 (Fed. Cir. 2015) (explaining "the value of the patented invention . . . is distinct from any value that artificially accrues to the patent due to the standard's adoption").

Mr. Dell flouts this rule by conflating what he refers to as "the AV1 patents" with the AV1 specification itself, and the '150 patent with the MVC annex of the H.264 standard, rather than assessing the incremental value of the asserted patents.[2] For example, Mr. Dell states: "According to Dr. Kalva, AV1 is a more efficient video codec than its predecessors and is approximately 30% more efficient than prior codes such as HEVC and VP9 and 50% more efficient than the H.264

---

[2] "MVC" is an optional annex to the H.264 standard with many aspects, and MVC itself has many aspects other than what is accused. Ex. 6, ¶ 150; Ex. 9, ¶ 342 (identifying many aspects of the MVC other than the allegedly claimed invention).

13

codec." Ex. 1, ¶ 249. Mr. Dell repeats these values when calculating a reasonably royalty: "AV1 Patents – Provide 30% to 50% improvement in efficiency compared to prior codecs such as H.264, VP9, and HEVC." *Id.*, ¶ 344. Similarly, when discussing the '150 patent, Mr. Dell states: "According to Dr. Xiong, MVC, as used in H.264/AVC outperforms simulcast coding resulting in bitrate savings of 20-50%," and Mr. Dell also repeats this assertion as part of his reasonable royalty analysis. *Id.*, ¶¶ 255, 344. Mr. Dell rationalizes his approach by claiming ACT's technical experts, Drs. Kalva and Xiong, say that these alleged technical benefits "are isolated to the incremental benefits and contributions" of the asserted patents. *Id.*, ¶ 251. But that is not so.

Dr. Kalva admitted repeatedly he had ***not*** opined the alleged 30%-50% improvements on which Mr. Dell relies are attributable specifically to the asserted patents. Ex. 7 at 240:5-15, 243:19-244:2, 245:15-246:7. He did not analyze the technical benefits of the asserted patents over prior codecs—i.e., the analysis on which Mr. Dell claims to rely. *Id.* at 249:3-23. Instead, the opinions in Dr. Kalva's report directly contradict Mr. Dell's understanding of the asserted patents' benefits. For example, Dr. Kalva claims AV1 is 30%-50% more efficient than prior codecs, but says this is "due to many incremental changes," not just the supposed improvements from the asserted patents. Ex. 5, ¶ 411. Dr. Xiong also offers no evidence of the '150 patent's specific supposed benefits rather than benefits of the MVC standard generally. Ex. 6, ¶ 301. He also confirmed that the '150 patent is not equivalent to MVC. Ex. 10 at 155:5-9, 160:21-161:4.

Because Mr. Dell's opinions on reasonable royalty rates for the '025, '303, '995, and '150 patents are premised on a 1.3x multiplier that he derives from the supposed technical benefits of AV1 and MVC as a whole, not the asserted patents, the Court should exclude Mr. Dell's opinions. Ex. 1, ¶ 346 (opinion parties would use "blended midpoint of the technical benefit range above, or 30%" at hypothetical negotiation), 356 (using 1.3x multiplier to █████████████ ).

14

██████████████████████████████████

## IV.    THE COURT SHOULD EXCLUDE MR. DELL'S FUTURE DAMAGES

The Court should also exclude the aspects of Mr. Dell's opinions about future possible infringement. ████████████████████████████████████████████

██████████████    But despite its moniker, Mr. Dell's "lump sum" opinion is merely a running royalty, based on an application of ████████████████████████ to a projection of Samsung's sales through the last patent to expire in 2035. *See* Ex. 1, Attachs. 3.1A-3.1D.

Mr. Dell's application of a running royalty to future sales is not authorized by statute. Under the Patent Act, "the court shall award the claimant damages adequate to compensate for the infringement." 35 U.S.C. § 284. The statute does not apply to alleged infringement that has not happened. *See In re Apotex, Inc.*, 49 F. App'x 902, 903 (Fed. Cir. 2002) (finding that "there can be no damages" in a case "involving only possible future infringement"); *Sci. Applications Int'l Corp. v. United States*, No. 17-CV-825, 2024 WL 94499, at *18 (Fed. Cl. Jan. 9, 2024) (rejecting opinion "calculat[ing] a 'lump sum' that applies a per-unit royalty rate to all accused devices that have been *and may still be* delivered" (emphasis original)). Instead, "the proper course of action to address future infringement is to address it *after* infringement has actually occurred." *Id.* (emphasis original). Thus, this Court recently rejected a similar opinion in *Netlist, Inc. v. Micron Tech., Inc.*: "Running royalties based on projected sales are speculative because they are 'applied to future acts of infringement that have not yet occurred.'" No. 2:22-CV-203-JRG-RSP, Dkt. 468 at 7 (E.D. Tex. Jan 27, 2024) (quoting *Allergen Sales, LLC v. UCB, Inc.*, No. 2:15-CV-1001-JRG-RSP, 2016 WL 8222619, at *2 (E.D. Tex. 2016)). Here too, the Court should preclude Mr. Dell's opinions that include damages for projected future alleged infringement.

## V.    CONCLUSION

Samsung requests that the Court grant this motion and exclude Mr. Dell's opinions.

Date: July 11, 2024

*/s/ Noah C. Graubart*

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571
rphillips@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
Christopher Dryer
D.C. Bar No. 1022460
dryer@fr.com
Laura C. Whitworth
VA Bar No. 91170
whitworth@fr.com
Payal Patel
D.C. Bar No. 90019320
ppatel@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile:  202-783-2331

Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Lawrence R. Jarvis
GA Bar No. 102116
jarvis@fr.com
Charles N. Reese
GA Bar No. 455637
creese@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St NE
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile:  404-892-5002

16

Steven R. Katz
MA Bar No. 642732
katz@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: 617-542-5070
Facsimile:  617-542-8906

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  903-934-8450
Facsimile:   903-934-9257

*Attorneys for Defendants Samsung
Electronics Co., Ltd.; and Samsung
Electronics America, Inc.*

17

████████████████████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on July 11, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

*/s/ Noah C. Graubart*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on July 11, 2024.  Joseph Mercadante attended for Plaintiff.  Daniel Tishman attended for Defendants.  The parties discussed their positions on this motion.  The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve.  Plaintiff indicated that it opposes this motion.

*/s/ Noah C. Graubart*

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

████████████████

18